**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **RONIESHA FORD, individually, and on behalf of all others similarly situated,**<br><br>      **Plaintiff,**<br><br>v.<br><br>**RENZENBERGER, INC.**<br>      **Defendants.** | **Civ. No.: 2:18-cv-02660-CM-KGG** |

**PLAINTIFFS' UNOPPOSED MOTION FOR SETTLEMENT AND FEE
APPROVAL AND SUGGESTIONS IN SUPPORT THEREOF**

# Contents

TABLE OF AUTHORITIES ............................................................................................................ iii

I.    INTRODUCTION ...............................................................................................................1

II.    SUMMARY OF THE CASE AND SETTLEMENT. ..........................................................2

III.    QUESTIONS PRESENTED ................................................................................................3

IV.    ARGUMENT ......................................................................................................................4

   A.    Approval of the Opt-Out Class Settlement. ..................................................................4

     i.    The Parties Provided the Best Notice Practicable to Class Members ........................5

     ii.    The Proposed Settlement Enjoys an Initial Presumption of Fairness. .......................8

     iii.    Analysis of the Applicable Factors Favors the Settlement. .......................................9

   B.    Approval of the FLSA Class Settlement. ...................................................................13

     i.    This Settlement Represents the Resolution of a Bona Fide Dispute ........................14

     ii.    This Agreement is Fair and Reasonable ...................................................................14

   C.    The Court Should Approve the Requested Attorney's Fees, Costs, and Service Awards. ...........15

     i.    The Time and Labor Required. .................................................................................17

     ii.    The Novelty and Difficulty of the Questions Presented. ..........................................18

     iii.    The Skill Requisite to Perform the Legal Service Properly. ....................................18

     iv.    The Preclusion of Other Employment by the Attorney Due to Acceptance of the Case. ...........19

     v.    The Customary Fee. ..................................................................................................20

     vi.    Whether the Fee is Fixed or Contingent. .................................................................20

     vii.    Time Limitations Imposed by the Client or the Circumstances. ..............................21

     viii.    The Amount Involved and the Results Obtained. .....................................................21

     ix.    The Experience, Reputation, and Ability of the Attorneys ......................................22

     x.    The "Undesirability" of the Case. ............................................................................22

     xi.    The Nature and the Length of the Professional Relationship with the Client. .........22

     xii.    Awards in Similar Cases. .........................................................................................23

V.    CONCLUSION .................................................................................................................23

# TABLE OF AUTHORITIES

## Cases

*Bellows v. NCO Fin. Sys., Inc.*, No. 3:07-cv-01413, 2008 WL 5458986, *8 (S.D. Cal. Dec. 10, 2008)............................9

*Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ..................................................................................................16

*Boeing Co. v. VanGemert*, 444 U.S. 472, 481 (1980) ........................................................................................16

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) ........................................................................9

*Bruner v. Sprint/United Mgmt. Co.*, No. 07-2164-KHV, 2009 U.S. Dist. LEXIS 60125, at 23-25 (D. Kan. July 14, 2009) ..................................................................................................................................................................19

*Casey v. Coventry Healthcare of Kansas, Inc.*, No. 08-00201-CV, 2012 WL 860395, at *1 (W.D. Mo. Mar. 13, 2012)4

*Central R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885) ..................................................................................16

*Cohn v. Nelson*, 375 F. Supp. 2d 844, 852 (E.D. Mo. 2005) ..............................................................................8

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-74 (1974) ................................................................................5

*Freebird, Inc. v. Merit Energy Co*, No. 10-1154-KHV, 2012 U.S. Dist. LEXIS 173075, at *4 (D. Kan. Dec. 6, 2012) .4

*Geiger v. Sisters of Charity of Leavenworth Health Sys.*, No. 14-2378, 2015 U.S. Dist. LEXIS 97362, at *5 (D. Kan. July 27, 2015) ..............................................................................................................................................................8

*Gottlieb v. Wiles* ..................................................................................................................................................5

*Harlow v. Sprint Nextel Corp*, No. 08-2222-KHV, 2018 U.S. Dist. LEXIS 93605, at *21 (D. Kan. June 4, 2018) ..8, 11

*Harlow v. Sprint Nextel Corp.*, No. 08-2222-KHV, 2018 U.S. Dist. LEXIS 93605, at *25 (D. Kan. June 4, 2018) .......5

*Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ..................................................................................................15

*In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000) ........................9

*In re BankAmerica Corp. Securities Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002) ..............................................15

*In re Continental Illinois Securities Litigation*, 962 F.2d 566, 569,574 (7th Cir. 1992) ......................................20

*In re Crocs, Inc. Sec. Litig.*, Civil Action No. 07-cv-02351-PAB-KLM, 2014 U.S. Dist. LEXIS 134396, at *16 (D. Colo. Sep. 18, 2014) ..............................................................................................................................................20

*In re Dep't of Energy Stripper Well Exemption Litig.*, 653 F. Supp. 108, 116 (D. Kan. 1986) ..........................4

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995) ............8

*In re Genetically Modified Rice Litig.*, 764 F.3d 864, 869, 871 (8th Cir. 2014) ..................................................5

*In re H&R Block IRS Form 8863 Litig.*, 4:13-MD-02474-FGJ, 2016 WL 7229889, at *1 (W.D. Mo. May 23, 2016)..17

*In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249, 1256 (D. Kan. 2006).....................................................9

*In re Warner Comm. Sec. Lit.*, 618 F. Supp. 735, 746 (S.D.N.Y. 1985) ..............................................................9

*Ingersoll et al. v. Farmland Foods, Inc.*, 5:10-CV-6046-FJG, 2013 WL 12155787, at *1 (W.D. Mo. Dec. 30, 2013)....17

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) ..........................................................15

*Lynn's Food Stores v. United States*, 679 F.2d, 1350, at 1354 (1982)..................................................................15

*Marcus v. Kansas Dep't of Rev.*, 209 F. Supp. 2d 1179, 1182 (D. Kan. 2002)) ..................................8, 11, 13

*McClean v. Health Sys., Inc.*, No. 6:11-CV-03037, 2015 WL 12426091 ..............................................................12

*Peters v. National R.R. Passenger Corp.*, 966 F.2d 1483, 1486 (D.C. Cir. 1992) ..............................................5

*Peterson v. Mortg. Sources, Corp.*, 2011 U.S. Dist. LEXIS 95523, at *4 (D. Kan. Aug. 25, 2011) ........................13, 16

*Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) ........................................................................8

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ........................................................................................5

*Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002)......................................9, 12

*Sanderson v. Unilever Supply Chain, Inc.*, No. 10-CV-00775-FJG, 2011 WL 5822413, at *3 (W.D. Mo. Nov. 16, 2011) ........................................................................................................................................................................9

**Shaw v. Interthinx, Inc.**, Civil Action No. 13-cv-01229-REB-NYW, 2015 U.S. Dist. LEXIS 52783, at *16 (D. Colo. Apr. 21, 2015) ....................................................................................................................................................18

*Tommey v. Computer Scis. Corp.*, No. 11-CB-02214-EFM, 2015 U.S. Dist. LEXIS 48011, at *2 (D. Kan. Apr. 13, 2015) ........................................................................................................................................................................13

*Tripp v. Berman & Rabin, P.A.*, No. 14-CV-2646-DDC-GEB, 2016 U.S. Dist. LEXIS 87691, at *5 (D. Kan. July 6, 2016) ........................................................................................................................................................................4

*Trustees v. Greenough*, 105 U.S. 527 (1882) ......................................................................................................16

## Rules

**29 U.S.C. § 216(b)** ..............................................................................................................................................12

**Fed. R. Civ. P. 23** ..................................................................................................................................................4

**Fed. R. Civ. P. 23(c)(2)(B)** ............................................................................................................5
**Fed. R. Civ. P. 23(e)(1)** ..............................................................................................................5
**Fed. R. Civ. P. 23(e)(2)** ..............................................................................................................4

Treatises
**Newberg on Class Actions** § 11.41................................................................................................8
**Newberg on Class Actions** § 13:10 (5th ed.)..................................................................................4

## <u>Exhibit List</u>

**Ex. A –<u>Declaration of Sarah Taillon</u>**
**Ex. B – <u>Declaration of Matthew Osman</u>**
**Ex. C – <u>Missouri Lawyers' Weekly 2018 Billing Rates</u>**
**Ex. D – <u>Affidavit of Jeralynn Walker</u>**

I.    **INTRODUCTION**

On May 15, 2019, the Court issued an Order Granting Plaintiff's Motion for Preliminary Approval Settlement Approval.  (Doc. 15).  In its Order, the Court certified the Settlement Classes for purposes of settlement, appointed undersigned counsel as Class Counsel, and directed the parties to proceed with notice and settlement administration according to the terms of the settlement.  *Id.* This Court reviewed the terms of resolution and initially concluded that the Parties' settlement "involves a bona fide dispute . . . ." *Id.*  Furthermore, the Court preliminarily found that the settlement "is a reasonable resolution . . . ." *Id.*  Nothing has happened to alter this finding.

Pursuant to the Order, the Court-approved notice was mailed to a class of approximately 217 members of the Settlement Classes on May 29, 2019.  The deadline to postmark returned claim forms, requests for exclusion and/or to object to the settlement was June 28, 2019.  All members of the Settlement Classes were advised in their notices of the estimated amount that: (1) they would receive; and (2) Class Counsel would receive under the settlement.  Following the claims administration process, 36 Class Members elected to participate in the $15,600.00 net settlement fund available to the class.  Moreover, the proposed settlement has been well received by the class members, no class member objected to the settlement and no class member opted out.

Upon final approval, the net settlement fund will flow directly to all participating class members without any further reduction for attorneys' fees, costs or settlement administration expenses.  This is money these class members would never have received but for this lawsuit.  This settlement provides exceptional relief now, without the additional risk and expense of continued litigation, trial, and appeal.  Accordingly, for all the reasons set forth in this and prior briefings, Plaintiffs respectfully request this Court grant final settlement approval and allow participating class members to receive their pro rata share of the Net Settlement Fund and to approve the reasonable and fair distribution of fees and costs to Plaintiffs' Counsel.

## II.    SUMMARY OF THE CASE AND SETTLEMENT.

On December 5, 2018, Plaintiff Roniesha Ford filed her Complaint, alleging violations of state and federal law against Defendant Renzenberger, Inc. ("Renzenberger"), centering around Plaintiffs' allegation that Defendant failed to properly calculate class members' overtime rates properly, resulting in a failure to pay all overtime compensation due and owing pursuant to state and federal law. This Complaint was brought on behalf of all hourly employees who received a shift differential during any workweek in which overtime was worked during the preceding three years.  Plaintiff Ford sought a nationwide collective class of all similarly situated employees for their FLSA claims and a Rule 23 class for state and common law claims.

Prior to submitting an answer to the complaint, Defendant, through its counsel, proposed mediation. The Parties agreed to mediate, and the Defendant further agreed to produce data regarding the putative class members so that Plaintiffs' counsel could calculate damages for the class in preparation for mediation.

The Parties attended mediation on April 3, 2019 conducted by the experienced mediator Michelle Minor. The Parties vigorously negotiated their respective legal positions, ultimately culminating in the settlement agreement that was presented to this Court for preliminary approval and which was ultimately preliminarily approved. The preliminarily-approved Settlement Agreement provides for distribution of the net settlement funds to the participating class members on the basis the amount of unpaid overtime premiums that Plaintiff alleged were owed. The Settlement Agreement represents the resolution of a bona fide dispute among the Parties that will provide closure for all class members and for the Defendant. The Parties agree that the terms of the Settlement Agreement are fair, reasonable, and that the agreement should be approved by the Court in this matter.

The Plaintiffs and Class Counsel believe the claims asserted in the litigation have merit and that the evidence developed to date supports the claims asserted.  Plaintiffs and Class Counsel,

2

however, also recognize the risk and expense of trying and, if necessary, appealing a complex case like this action, and believe that the settlement confers substantial and meaningful benefits upon the members of the settlement class now.  Defendant adamantly denies that Plaintiffs' claims have any merit and denies any wrongdoing but wish to avoid the uncertainty, risk, and business disruption associated with further litigation.

The main terms of the settlement are as follows:
- The Settlement creates and makes available a common fund of $37,000.00, including attorneys' fees and costs, to settle the claims of the approximately 217 class members;

- Detailed notices were provided to class members after preliminary approval of settlement apprising class members of, among other things:

  - their estimated individual settlement amounts,
  - their right to opt out of the settlement if they so wish,
  - the procedure for claiming monies and/or objecting to the settlement;
  - and all other rights affected by the proposed settlement.

- Settling Plaintiffs will release wage and hour and related common law claims arising out of their work as Hourly Employees for Defendants, jointly and individually;

- Attorneys' fees in the amount of $20,000.00 to be paid to Plaintiffs' Counsel;

- Costs in the amount of $1,400 to be paid to Plaintiffs' Counsel,

The Class and Collective Settlement Agreement, Release, & Waiver ("Settlement Agreement") was previously filed in this matter. (Doc. 14-1).

## III.    QUESTIONS PRESENTED

1) Should the Court grant Plaintiffs' motion to approve the settlement of this case when the settlement is fair, reasonable and provides an immediate, significant benefit to the class members who affirmatively choose to participate, and ends contested litigation prior to trial?

2) Should the Court grant the Plaintiffs' motion to approve the requested attorneys' fees and costs when the fees and costs are reasonable and commensurate for the labor expended in

light of the articulated factors used to judge such matters?

## IV.    ARGUMENT
### A.    Approval of the Opt-Out Class Settlement.

Rule 23(e) requires a court to determine whether a final settlement binding upon class members is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).  In making this determination, the Court considers the "settlement agreement, taken as a whole. . ." *In re Dep't of Energy Stripper Well Exemption Litig.*, 653 F. Supp. 108, 116 (D. Kan. 1986).

With respect to a Rule 23 class settlement, "[t]he settlement approval process typically occurs in two phases. First, the court considers whether preliminary approval of the settlement is appropriate." William B. Rubenstein, **Newberg on Class Actions** § 13:10 (5th ed.).  "If the Court grants preliminary approval, it directs notice to class members and sets a hearing at which it will make a final determination on the fairness of the class settlement." *Tripp v. Berman & Rabin, P.A.*, No. 14-CV-2646-DDC-GEB, 2016 U.S. Dist. LEXIS 87691, at *5 (D. Kan. July 6, 2016) (quoting *Freebird, Inc. v. Merit Energy Co*, No. 10-1154-KHV, 2012 U.S. Dist. LEXIS 173075, at *4 (D. Kan. Dec. 6, 2012)).  The first step was completed on May 15, 2019 when the Court granted preliminary approval of the settlement and ordered notice distributed to the class.

In this second, final step, the Court again determines whether the settlement is fair, reasonable, and adequate, "taking account of all of the information learned during [the notice] process, the court decides whether or not to give 'final approval' to the settlement." *Tripp* at *5-6 (quoting **Newberg on Class Actions** § 13:10). "Ultimately, the court must examine whether the interests of the class are better served by settlement than by further litigation." *Casey v. Coventry Healthcare of Kansas, Inc.*, No. 08-00201-CV, 2012 WL 860395, at *1 (W.D. Mo. Mar. 13, 2012).  Having provided the notice pursuant to the Court-approved plan, and receiving no Class Member objections, the Plaintiffs request that the Court grant final approval of the settlement.

i.    **The Parties Provided the Best Notice Practicable to Class Members.**

Constitutional due process requires that absent class members receive the best notice practicable, reasonably calculated to inform them of the pendency of the action and affording them the opportunity to object. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985); Fed. R. Civ. P. 23(c)(2)(B).  However, as to the mechanics of the process, "[c]ourts retain discretion over the content and form of notice." *Harlow v. Sprint Nextel Corp.*, No. 08-2222-KHV, 2018 U.S. Dist. LEXIS 93605, at *25 (D. Kan. June 4, 2018) (quoting *Gottlieb v. Wiles*, 11 F.3d at 1013 (10th Cir. 1993)).

Pursuant to Rule 23(e)(1)(B), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1).  The purpose of notice is to "afford members of the class due process which, in the context of the Rule 23(b)(3) class action, guarantees them the opportunity to be excluded from the class action and not be bound by any subsequent judgment." *Peters v. National R.R. Passenger Corp.*, 966 F.2d 1483, 1486 (D.C. Cir. 1992) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-74 (1974)).

a.    **Contents of the Notice.**

In ruling on the Parties' preliminary settlement approval motion, this Court already evaluated the notice and claim form.  This Court "approve[d] the parties' proposed notice and claims forms…" (Doc. 15).  Accordingly, this Court already held that the content of both the notice and claim form constituted the best notice practicable under the circumstances and satisfied all procedural due process requirements.

b.    **Distribution of the Notice.**

Similarly, in its Order granting preliminary settlement approval, the Court directed that "the parties shall cause the proposed settlement notice and claim form to be mailed to all members of the settlement class," thereby approving the Agreement's proposed method for disseminating the notices

and claim form. (Doc. 15). The Parties have now disseminated the notices as directed, which was overseen by Osman & Smay LLP's paralegal, Sarah Taillon ("Taillon" or "Administrator"). *See Declaration of Sarah Taillon* ("*Taillon Declaration*") (Ex. A). On May 29, 2019, Plaintiff's Counsel mailed the following by first class mail to the last known address of approximately 217 members of the Settlement Classes: (1) the Notice of Class and Collective Action Settlement; and (2) Settlement Claim Form. (the "Notice Packet") *Id.*

A total of 39 original Notice Packets were initially returned as undeliverable. *Id.* The Administrator ran a public record search for each individual whose notice was returned as undeliverable without a forwarding address, in a further attempt to locate those individuals and provide them with the opportunity to participate in the settlement. *Id.* The undeliverable addresses were researched, and updated addresses were found for all 39 of those individuals to which Notice Packets were re-mailed. *Id.* Of those 39 re-mailed Notice Packets, 10 were returned again as undeliverable. *Id.*

The notices provided instructions on how class members could object to the settlement. The Administrator did not receive any objections to the settlement. *Id.* The notice also provided instructions on how class members could exclude themselves from the settlement. No exclusions were received. *Id.*

As of July 10, 2019, 36 valid claim forms acceptable to all Parties were received by the Administrator. *Id.* Accordingly, following final resolution of the claim's administration process, 36 class members will be entitled to receive the entirety of the $15,600 net settlement fund under the settlement. If finally approved, this settlement will result in a recovery of approximately 783.5% of each participating class member's best day damages.

The Parties' notice plan, which this Court approved, and the Administrator implemented, constituted the best notice practicable to inform the class members of their rights and options under

the settlement.

### c. Deviation From The Court's Procedure

Pursuant to the Court's Order on May 15, 2019, claim forms were required to be submitted by no later than June 28, 2019. *Order*, ¶ 6 (Doc. 15). On July 3, 2019, Plaintiffs' Counsel was contacted by a Class Member, Jeralynne Walker, who informed Plaintiffs' Counsel that she had forgotten to submit her Settlement Claim Form by the deadline. *Taillon Declaration* (Ex. A). On July 5, 2019, Plaintiffs' Counsel received the Settlement Claim Form of Jeralynne Walker that had been postmarked as of July 3, 2019. *Taillon Declaration* (Ex. A); *Affidavit of Jeralynne Walker* (Ex. D).

Pursuant to the terms of the Settlement, the entire Net Settlement Fund will be distributed to the participating class members, such that non-participating Class Members' amounts would be reallocated among the participating Class Members, rather than reverting back to the Defendant. *See Settlement Agreement*, ¶ 8 (Doc. 14-1). This Settlement Agreement has been preliminarily approved and the settlement class has been defined as "all current and former hourly employees of Defendant who worked overtime and received a shift differential during any workweek between May 1, 2016 and May 1, 2019." *See Order*, ¶ 2 (Doc. 15). Plaintiffs' Counsel therefore believes that they are deemed to represent all members of the Rule 23 Settlement Class unless an affirmative Request for Exclusion was received by June 28, 2019. *See Order*, ¶ 7 (Doc. 15). As a result, Plaintiffs' Counsel believes that, in the abundance of caution, the Court should be made aware of a conflict that may have developed between members of the Settlement Class.

Given the non-reversionary nature of the Net Settlement Fund, the participating Class Members who met the June 28, 2019 deadline will suffer prejudice in the form of a reduction in their share of the Net Settlement Fund if Ms. Walker is permitted to participate in the settlement.

Specifically, the Participating Class Members will go from a payout amount of 783.5% to 766.3%[1] of their Best Day Damages. *Declaration of Matthew Osman ("Osman Declaration")*, ¶ 17 (Ex. B). On the other hand, Ms. Walker, if not permitted to participate in the Settlement will, by operation of the Court's final approval of the settlement, will release her state law claims. *Osman Declaration*, ¶ 17, fn 1. (Ex. B). However, in the event that this Court prevents Ms. Walker from participating in the Settlement, she will still be able to file her own individual claims pursuant to the Fair Labor Standards Act. *Osman Declaration* ¶ 17, fn 1. (Ex. B).

Pursuant to Plaintiffs' Counsel's ethical duties to the participating Settlement Class Members, the non-participating Rule 23 Class Members, and this Court's Order setting forth the notice procedures in this matter, Plaintiffs' Counsel asks that this Court resolve this issue by deciding whether or not to permit Ms. Walker to participate in the Settlement.

### ii.    The Proposed Settlement Enjoys an Initial Presumption of Fairness.

Courts adhere to "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." **Newberg on Class Actions** § 11.41. "When a settlement is reached by experienced counsel after negotiations in an adversarial setting, there is an initial presumption that the settlement is fair and reasonable." *Harlow v. Sprint Nextel Corp*, No. 08-2222-KHV, 2018 U.S. Dist. LEXIS 93605, at *21 (D. Kan. June 4, 2018) (quoting *Marcus v. Kansas Dep't of Rev.*, 209 F. Supp. 2d 1179, 1182 (D. Kan. 2002)). Further "[t]he law favors compromise and settlement of class action suits." *Geiger v. Sisters of Charity of Leavenworth Health Sys.*, No. 14-2378, 2015 U.S. Dist. LEXIS 97362, at *5 (D. Kan. July 27, 2015); *see also* *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) ("A strong

---

[1] Throughout the remainder of this Memorandum, Plaintiffs' Counsel refers to this percentage as 783.5%, but in the event that this Court permits Ms. Walker to participate in the settlement, the Court should substitute 766.3% throughout.

public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor."). This preference is particularly strong "in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *Cohn v. Nelson*, 375 F. Supp. 2d 844, 852 (E.D. Mo. 2005) (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995)).

After the Parties' arm's-length negotiations, "it is not for the Court to substitute its judgment as to a proper settlement for that of such competent counsel." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000) (quoting *In re Warner Comm. Sec. Lit.*, 618 F. Supp. 735, 746 (S.D.N.Y. 1985)); *Sanderson v. Unilever Supply Chain, Inc.*, No. 10-CV-00775-FJG, 2011 WL 5822413, at *3 (W.D. Mo. Nov. 16, 2011) (crediting the judgment of class counsel experienced in FLSA cases that settlement was fair, reasonable, and adequate); *Bellows v. NCO Fin. Sys., Inc.*, No. 3:07-cv-01413, 2008 WL 5458986, *8 (S.D. Cal. Dec. 10, 2008) ("it is the considered judgment of experienced counsel that this settlement is a fair, reasonable, and adequate settlement of the litigation, which should be given great weight."); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) ("The recommendations of plaintiffs' counsel should be given a presumption of reasonableness.").

### iii.    Analysis of the Applicable Factors Favors the Settlement.

"The Tenth Circuit has set forth four non-exclusive factors which this court must consider in evaluating whether the proposed settlement is fair, reasonable, and adequate: (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable." *In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249, 1256 (D. Kan. 2006) (quoting *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314

F.3d 1180, 1188 (10th Cir. 2002)).  These factors weigh in favor of finding the final settlement fair, reasonable, and adequate in this case.

### a. The Proposed Settlement was Fairly and Honestly Negotiated

There is no indication or evidence of fraud or collusion in the settlement.  Indeed, this case has been diligently prosecuted and defended throughout the litigation. Although this matter was resolved relatively quickly, such resolution required the Parties, with the assistance of a neutral third-party mediator, Michelle Minor, to accurately assess the strengths and weaknesses of their respective cases in order to resolve this matter so expeditiously. This matter was strenuously negotiated by each party at arm's length with the assistance of an experienced mediator and should therefore be approved.

### b. Serious Question of Law and Fact Exist

There are also significant risks with respect to the merits.  All of the claims in this case would first depend on a class-wide finding of a uniform practice of miscalculating the overtime compensation due and owing.  But even assuming class-wide miscalculation, Defendant would still be able to potentially avoid (or reduce the extent of) liability by showing that class members did not work overtime.

Furthermore, even if this case were to proceed to trial and Plaintiff prevailed on the question of liability, substantial questions would remain as to the measure of damages and the entitlement of each class member to recover for alleged unpaid overtime wages for any hours worked over forty in a workweek.  Although Plaintiff believes strongly in the merits of her claims, these uncertainties make it extremely difficult to predict how a Court or jury would ultimately view this case.

On the other hand, the proposed settlement ensures that class members will recover proportionally to their alleged injuries.  Claiming class members will receive an award proportionate to the unpaid damages alleged by Plaintiffs over the full duration of the applicable period.  This

equitable and certain recovery is highly favorable in light of the many uncertainties still pending in the litigation and weighs in favor of approving the proposed settlement.

### c. The Value of An Immediate Recovery Outweighs Potential Future Relief

This miscalculation case is complex and carries significant risks for the Parties as to both legal and factual issues and litigating the case to trial would undoubtedly consume great time and expense. As mentioned above, the Parties have successfully resolved this matter before the Defendant has submitted an Answer. As a result, if this Agreement is approved, the Parties will have avoided at least 6-8 months of litigation and the attendant risks and expenses that would come along with such litigation. This future litigation would have consumed indeterminate hours of labor by the Parties' counsel and required significate discovery regarding documents, witnesses, and other sources of information. As to complexity, the mathematical/legal arguments that each party would have made were significant and would have required significant analysis. Furthermore, class issues regarding the whether a class should be certified and, if so, the scope thereof would have taken significant resources of the Parties and of this Court. Even if the case proceeded to trial, substantial legal questions affecting any potential recovery by Plaintiff and class members remain to be resolved, including the extent of liability for Plaintiffs' overtime claims, the actual injury and entitlement of each member of the class to recover, and the measures of damages under the FLSA and state law. The uncertain disposition of the litigation, as well as these unresolved questions, create substantial complexity and risk for Plaintiff and the class, and thus weighs in favor of the recovery guaranteed by the proposed settlement.

### d. All Parties Favor the Settlement.

The final factor asks whether the parties deem the settlement fair and reasonable. *Harlow v. Sprint Nextel Corp.*, No. 08-2222-KHV, 2018 U.S. Dist. LEXIS 93605, at *21 (D. Kan. June 4, 2018). When a court is evaluating a proposed settlement that "is reached by experienced counsel after

negotiations in an adversarial setting, there is an initial presumption that the settlement is fair and reasonable. . . " and that "[c]ounsels' judgment as to the fairness of the agreement is entitled to considerable weight." *Marcus v. State of Kan.*, 209 F. Supp. 2d 1179, 1182 (D. Kan. 2002)

Here, Plaintiff and members of the Settlement Classes had the benefit of attorneys who are highly experienced in complex wage and hour litigation and familiar with the facts and law in the case, and who have negotiated many such class and collective action settlements. *See **Osman Declaration*** (Ex. B). Likewise, Defendant also retained experienced counsel that could successfully navigate complex litigation in the wage and hour context and have negotiated many such settlements. *Id.*

The negotiations were hard-fought and at arm's-length. In Plaintiffs' Counsel's view, the settlement provides substantial and meaningful benefits to the class, especially when one considers, among other things, the attendant expense, risks, difficulties, delays, and uncertainties of litigation, trial, and post-trial proceedings. *Id.* Specifically, participants in the settlement are scheduled to receive approximately 783% of their best day damage calculation. *Id.* When compared with similar litigation, the relief to the class is substantial in light of the class members' best day damage calculations.

The reaction of the members of the Settlement Classes has been unanimously, supportive of the settlement. As noted above, of the approximately 217 members of the Settlement Classes receiving notice of the settlement, not one individual filed an objection, and not one individual opted-out.

The opinions of class members, expressed through objections, opt-outs, and silence, represent the most important "new" information available at the court's final, rather than preliminary, settlement assessment stage. To be sure, final approval may be warranted even where a percentage of class members object to or opt-out of a settlement. *See **Rutter & Wilbanks Corp. v. Shell Oil Co.*,** 314 F.3d 1180, 1189 (10th Cir. 2002) (ruling that the district court did not abuse its discretion in determining that the settlement, from which an extremely small percentage of class members opted out, was fair, reasonable and adequate).

But where, as here, no class members have objected, final approval is eminently appropriate. *See McClean v. Health Sys., Inc.*, No. 6:11-CV-03037, 2015 WL 12426091, at *6 ("No Class Member filed an objection to this settlement, and only fourteen individuals opted out (.04% of the Class). This lack of opposition clearly supports approval."). The fact that no members of the Settlement Classes have objected to any term of the proposed settlement and not one has opted out, weighs heavily in favor of final settlement approval.

In sum, the settlement brings substantial and certain monetary value to class members now, rather than uncertain value to an uncertain number of people at an uncertain time after protracted litigation involving complex and evolving legal issues. *Id.* ¶ 16. While both sides believe the facts support their respective positions, Plaintiffs and Defendant reached this proposed compromise after extended settlement discussions facilitated by a well-regarded mediator. Plaintiffs therefore request that the Court preliminarily approve the settlement and authorize notice to be sent to the respective class members.

### B. Approval of the FLSA Class Settlement.

The court's inquiry as to the fairness of an FLSA settlement arising from a private enforcement action is two-staged. Pursuant to the law within this district, the court should first determine that the settlement was the product of a bona fide dispute. *Tommey v. Computer Scis. Corp.*, No. 11-CB-02214-EFM, 2015 U.S. Dist. LEXIS 48011, at *2 (D. Kan. Apr. 13, 2015) (citing *Peterson v. Mortg. Sources, Corp.*, 2011 U.S. Dist. LEXIS 95523, at *4 (D. Kan. Aug. 25, 2011)). Second, the Court should determine whether the Settlement Agreement represents a fair and reasonable resolution of a bona fide dispute over FLSA coverage. *Id.* (citing *Peterson* at *4). "When a settlement is reached by experienced counsel after negotiations in an adversarial setting, there is an initial presumption that the settlement is fair and reasonable. . ." and "[c]ounsels' judgment as to the fairness of the agreement is entitled to considerable weight." *Marcus v. State of Kan.*, 209 F. Supp. 2d 1179, 1182-83 (D. Kan.

13

2002). Upon determination that the settlement of a bona fide dispute is fair and reasonable, the Court may enter a stipulated judgment. **Peterson** at 17. Further, FLSA settlements must also contain an award of attorneys' fees. *Id.* at 18; see also 29 U.S.C. § 216(b). Plaintiffs respectfully submit that this Court should conclude that the Parties' settlement is a reasonable resolution of a bona fide dispute in contested litigation.

### i. This Settlement Represents the Resolution of a Bona Fide Dispute

First, this settlement represents the resolution of a *bona fide* dispute, as the Agreement came only after a vigorously contested mediation. **Osman Declaration** ¶ 12 (Ex. B). The Parties negotiated and exchanged informal discovery and participated in an arm's-length mediation. **Id. ¶¶** 12 & 13 The Parties disputed numerous key issues in the cases: (1) whether the case was appropriate for conditional and/or class certification; (2) whether class members are similarly situated; (3) whether Plaintiff and the putative class members were similarly situated; (4) whether Plaintiff was properly compensated for all hours worked; (5) the average amount of hours worked by Plaintiff and similarly situated employees; (8) whether class members worked overtime; (9) the proper calculation of damages; and (10) the likelihood of success on the merits. Although Plaintiffs strongly believe their claims are well-suited for conditional and class certification, the arguments raised by Defendant in this matter presented risks to certification that could not be eliminated without the Parties reaching the instant Agreement. Only after a significant and intensive mediation, with the assistance of an experienced mediator, were the Parties able to reach the instant Settlement Agreement. There can be no doubt that this Agreement resolves a *bona fide* dispute between Plaintiffs and Defendants.

### ii. This Agreement is Fair and Reasonable

Second, the Agreement is fair and reasonable. The settlement offers a significant payment to the Plaintiff and participating class members now. After deducting all administrative expenses, attorneys' fees and costs, the Agreement provides Plaintiff and the class members to recover

14

approximately 783.5% of their best day damages. *Osman Declaration* (Ex. B). Given this result, Participating class members will receive meaningful awards after costs and attorneys' fees, in proportion to the actual amount of damages that they incurred.

Moreover, the settlement and the Agreement were only achieved after a staunchly contested mediation. With the assistance of Ms. Minor, the Parties were able to agree on the $37,000 settlement fund and the material terms now memorialized in the Agreement. Under these circumstances, a presumption of fairness and reasonableness attaches to the settlement and the Agreement. *See Lynn's Food Stores v. United States*, 679 F.2d, 1350, at 1354 (1982) (courts rely on the adversarial nature of a litigated FLSA case resulting in settlement as indicia of fairness); *see also In re BankAmerica Corp. Securities Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002) ("In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery.").

"As courts have recognized, when considering settlement agreements, they should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere probability of relief in the future, after protracted and expensive litigation. In this respect, it has been held proper to take the "bird in the hand" instead of a "prospective flock in the bush" approach. *In re BankAmerica*, 210 F.R.D. at 701. Accordingly, Plaintiff requests that the Court preliminarily approve the settlement and order that Plaintiff and participating class members be paid in accordance with the terms of the settlement and the Agreement.

### C. The Court Should Approve the Requested Attorney's Fees, Costs, and Service Awards.

As part of the settlement, Plaintiffs request Twenty Thousand Dollars and No Cents

($20,000.00) as attorneys' fees and One Thousand Four Hundred Dollars and No Cents ($1,400) as reimbursement for costs incurred in this action. Defendants do not oppose such request. Such fees and expenses are reasonable.

The Supreme Court has expressed a preference that parties agree to the amount of the fee: "A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Here, the Parties have done so because Defendants have agreed that they will not oppose Plaintiffs' request for such reasonable fees and costs. The Parties in this matter have also agreed to a common fund settlement. When a settlement yields a common fund for class members, fees must be paid from the recovery. *Boeing Co. v. VanGemert*, 444 U.S. 472, 481 (1980). This common fund doctrine is firmly rooted in American case law. *See, e.g., Trustees v. Greenough*, 105 U.S. 527 (1882); *Central R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885); *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984).

In determining a reasonable attorney's fee in this Circuit, the Court "must consider the factors articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)." *Peterson v. Mortg. Sources, Corp.*, No. 08-2660-KHV, 2011 U.S. Dist. LEXIS 95523, at *32 (D. Kan. Aug. 24, 2011) (the "Johnson Factors"). These factors are:

> (1) time and labor required; (2) novelty and difficulty of question presented by the case; (3) skill requisite to perform the legal service properly; (4) preclusion of other employment by the attorneys due to acceptance of the case; (5) customary fee, (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or circumstances; (8) amount involved and results obtained; (9) experience, reputation and ability of the attorneys; (10) "undesirability" of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases.

**Id** at 32-33.

### i. The Time and Labor Required.

In this case, Plaintiff's Counsel has performed over 100 hours investigating, preparing, negotiating, sending notice, and drafting pleadings this matter to date. *Osman Declaration*, ¶ 19 (Ex. B). Plaintiff's Counsel expects to spend approximately 10 additional hours wrapping up this case in Counsel's attendance at the final approval hearing and responding to any questions or concerns of the class members. **Id.** at ¶ 19. These approximately 100 hours generate an hourly rate of approximately $200.00 per hour. **($20,000 in fees**/~100 billed hours= ~$200.00 per hour). This amount falls well within, if not below, the normal rates for an attorney of Counsel's stature and experience in the Kansas City area. *See* **"Billing Rates 2018," Missouri Lawyers Weekly**, August 13, 2018 (listing Kansas City partner-level hourly rates in FLSA and class and collective action litigation ranging from $550 to $865 per hour) ("**Missouri Lawyers' Weekly 2018 Billing Rates")** (Ex. C); see also *Osman Declaration* (Ex. B). Throughout the litigation, Class Counsel kept their contemporaneous time records in 6-minute increments.[2] *Osman Declaration* (Ex. B). Class Counsel have thoroughly reviewed the time entries recorded in this case and, exercising billing judgment, have removed any time for non-essential tasks or duplicative efforts. All of the time Class Counsel has submitted to the Court for compensation is (i) of the kind and character that Plaintiffs' counsel would normally bill to paying clients, (ii) time that counsel normally tracks and seeks to be paid for at the conclusion of

---

[2] Plaintiffs' counsel's daily time entries are voluminous and reveal attorney-client privileged and work product information. The daily time entries are particularly sensitive in such cases because they serve as a roadmap for Plaintiffs' litigation strategy in FLSA class cases. For these reasons, courts evaluating attorneys' fees applications in class settlements typically accept and rely on affidavits and summaries of billing entries in lieu of requiring daily time entries. *See, e.g., In re Genetically Modified Rice Litig.*, 764 F.3d 864, 869, 871 (8th Cir. 2014) (in large scale litigation, courts determining an attorney fee award may rely on billing summaries and affidavits submitted by lead attorneys and need not review actual daily billing records); *In re H&R Block IRS Form 8863 Litig.*, 4:13-MD-02474-FGJ, 2016 WL 7229889, at *1 (W.D. Mo. May 23, 2016) (granting Docs. 105-106, fee motion supported by affidavits summarizing hours billed by each time keeper in lieu of detailed daily time entries); *Ingersoll et al. v. Farmland Foods, Inc.*, 5:10-cv-6046-FJG, 2013 WL 12155787, at *1 (W.D. Mo. Dec. 30, 2013) (granting Docs. 274-275, fee motion supported by affidavits from lead counsel containing aggregate summaries of work performed in lieu of daily time entries). This approach is appropriate here; however, such daily time entries are available upon request.

successful contingency litigation, and (iii) added value to the case and was reasonably necessary to give the members of the Settlement Classes the best possible change for a favorable outcome. ***Osman Declaration*** (Ex. B).

Further, Plaintiff's Counsel has recently had two separate fee approval motions approved, finding fees amounting $600 per hour for Matthew Osman, $475 per hour for Kathryn Rickley, and $275 per hour for Geoffrey Kalender all to be reasonable. Both of these approved fee approval motions were filed under seal in the Western District of Missouri and can be made available for an *in camera* review at the Court's request. ***Osman Declaration*** (Ex. B). As discussed above, Plaintiffs' counsel spent over 100 hours prosecuting the case to a favorable settlement. ***Osman Declaration*** (Ex. B). Work on this case remains incomplete, and if approved, Class Counsel will devote additional time to settlement administration and the distribution process, without seeking any additional compensation. ***Osman Declaration*** (Ex. B). This factor supports Plaintiff's application.

### ii.    The Novelty and Difficulty of the Questions Presented.

This FLSA collective action presented a myriad of unique legal issues, considering this case was also pursued as a "hybrid" Rule 23 class action. This case required a firm understanding of the "opt-in" FLSA mechanism and its implications which are distinct from the traditional Rule 23 opt-out class. This hybrid class case also required a specialized familiarity with novel and complex procedural rules. In terms of the specific allegations, calculation of classwide damages required significant knowledge and experience to properly calculate and would have taken significant efforts to present in a coherent manner to a jury or fact-finder at trial. This factor supports Plaintiffs' application.

### iii.    The Skill Requisite to Perform the Legal Service Properly.

Courts in this Circuit have held that "wage and hour issues in [similar] litigation are governed by highly technical state and federal wage statutes and regulations" and that a Class Counsel who has litigated numerous cases under these laws would possess "the requisite skill to perform the legal service

required in this complex litigation." **Shaw v. Interthinx, Inc.**, Civil Action No. 13-cv-01229-REB-NYW, 2015 U.S. Dist. LEXIS 52783, at *16 (D. Colo. Apr. 21, 2015).  Success in this matter depended on: a class-wide finding of a uniform practice of miscalculating the overtime compensation due and owing; a showing that class members did work overtime; the measure of damages; and the entitlement of each class member to recover for unpaid overtime wages.  Class Counsel are highly experienced and litigate complex wage-and-hour cases of similar complexity in Kansas City and the region and have successfully prosecuted many wage and hour actions both locally and nationwide.  **Osman Declaration** (Ex. B).  Due to Counsel's skill and experience, Parties were able to arrive at the present settlement without undue time spent litigating these difficult questions listed above.  Class Counsel are highly experienced and litigate complex wage-and-hour cases of similar complexity in Kansas City and the region.  The hourly rates reflected are market rates similar to those charged by firms with comparable expertise in class actions and other complex litigation, and these rates are comparable to those approved by courts in this region.  **Osman Declaration** (Ex. B). This factor supports Plaintiffs' application.

### iv.    The Preclusion of Other Employment by the Attorney Due to Acceptance of the Case.

As explained above, this case required a significant time commitment, and will continue to require significant attention for some time after the Court grants final approval of this settlement. Class Counsel estimates that, in the time they have litigated this case, the attorneys could have accepted a wage-and-hour case of similar size and complexity, without incurring the exceptional costs and risks associated with this case.  **Osman Declaration** (Ex. B).  As a result, there is no doubt that Class Counsel experienced the loss of significant other case opportunities.  This factor supports their fee request.

### v.    The Customary Fee.

Class Counsel typically only accepts contingency fee cases, and the rates charged in this case are customary to those they charge in other cases. *Osman Declaration* (Ex. B). Furthermore, the effective hourly rate of approximately $200 per hour compares very favorably with rates charged in the Kansas City area for similar types of lawsuits. *See Missouri Lawyer's Weekly 2018 Billing Rates* (Ex. C) (listing Kansas City partner-level hourly rates in FLSA and class and collective action litigation ranging from $550 to $865 per hour); *see also Bruner v. Sprint/United Mgmt. Co.*, No. 07-2164-KHV, 2009 U.S. Dist. LEXIS 60125, at 23-25 (D. Kan. July 14, 2009) (finding a 2009 effective hourly rate of $590.91 high but acceptable for a "garden variety" FLSA case for an experienced litigator). This is clearly not a high fee, especially in light of the years of experience, excellent reputation, and extraordinary ability of Plaintiffs' Counsel. Matthew E. Osman has spent over 12 years litigating such wage claims and is able to call upon that deep well of experience to arrive at the best possible settlement for his client. *Osman Declaration*, Chart 1. (Ex. B). As such, there is no doubt the requested fees are reasonable given the skill required

### vi.    Whether the Fee is Fixed or Contingent.

Numerous cases have recognized that risk is an important factor in determining the fee award. *See, e.g., In re Crocs, Inc. Sec. Litig.*, Civil Action No. 07-cv-02351-PAB-KLM, 2014 U.S. Dist. LEXIS 134396, at *16 (D. Colo. Sep. 18, 2014) *(citing In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 994 (D. Minn. 2005) ("the risk of receiving little or no recovery is a major factor in awarding attorney fees"); *In re Charter,* 2005 WL 4045741, *15 (finding that class actions "are by their nature, complex and difficult to prove."); *In re Continental Illinois Securities Litigation*, 962 F.2d 566, 569, 574 (7th Cir. 1992) (reversing trial court for refusing to award class action contingency lawyers more than their ordinary billing rates in order to reflect the risky character of their undertaking). Class Counsel undertook the representation of the class on a fully contingent

basis and would recover no amount for expenses or time incurred unless the case succeeded. *Osman Declaration* (Ex. B). It is well recognized that contingency representation ought to be compensated at a higher rate and is appropriately considered when assessing the hourly rates of plaintiffs' counsel. This factor weighs in favor of granting Plaintiffs' fee request.

### vii. Time Limitations Imposed by the Client or the Circumstances.

This case did not present an unusually compressed time period; however, it is the nature of collective actions to incentivize resolutions as quickly as possible due to the manner that statutes of limitations expire until a putative class member joins the litigation. Were Plaintiffs' Counsel to take an extra day to litigate or file, that extra day would result in a diminished award of one day for whoever's consent to join was thereby delayed. As such, the inherent nature of time limitations in an FLSA case argue for fee approval. This factor supports Plaintiffs' application.

### viii. The Amount Involved and the Results Obtained.

The benefits obtained for members of the settlement class as a result of this settlement are substantial – a common fund of $15,600 to settle the claims of the 36 class members who have opted to participate and returned acceptable claims forms. The settlement provides damages of approximately 783.5% of the participants' best day damages *Osman Declaration*, ¶ 17 (Ex. B). This is an extremely favorable result given that Plaintiffs faced the real possibility of receiving nothing in the event that Defendant prevailed on its arguments. *Osman Declaration*, ¶ 26 (Ex. B). Furthermore, in the absence of this settlement, there was a real possibility that a class/collective would never have been certified and the putative Class Members would have never enjoyed the opportunity to recover for any such claims. *Osman Declaration*, ¶ 26 (Ex. B). This settlement eliminates the genuine risk of recovering nothing, along with the substantial risks associated with trial and appeal and is an excellent result. Importantly, the settlement has been well received by the members of the settlement class. After receiving their Court-approved notice, not one class member has objected to

the terms of the settlement, and not one has opted out.  As such, the settlement approximates the amount which individual claimants could have expected to receive assuming a successful outcome at trial, and therefore argues in favor of fee approval.

### ix.     The Experience, Reputation, and Ability of the Attorneys

As discussed above and in the attached declarations, Class Counsel is highly skilled, experienced in wage-and-hour litigation, and enjoys a favorable reputation in Kansas City and beyond. *Osman Declaration*, ¶ 23 (Ex. B).  Due to Counsel's skill and experience, Parties were able to arrive at the present settlement without undue time spent litigating these difficult questions listed above. Class Counsel are highly experienced and litigate complex wage-and-hour cases of similar complexity in Kansas City and the region.  Counsel's hours will be compensated at or around the rate of $200.00 per hour, towards the lower end of the spectrum for Kansas City area attorneys. *Missouri Lawyers' Weekly 2018 Billing Rates* (Ex. C).  The hourly rates reflected are market rates similar to those charged by firms with comparable expertise in class actions and other complex litigation, and these rates are comparable to those approved by courts in this region.  *Osman Declaration*, ¶ 23 (Ex. B). This factor supports Plaintiffs' application.

### x.     The "Undesirability" of the Case

The time and financial resources required to litigate a "hybrid" FLSA collective and Rule 23 class action case such as this, involving hundreds of potential class members, make this case particularly undesirable to most plaintiff's attorneys in the market.  *Osman Declaration*, ¶ 26 (Ex. B).  This factor supports Plaintiffs' fee request.

### xi.     The Nature and the Length of the Professional Relationship with the Client.

Class Counsel spent many hours discussing the claims in this case with the named Plaintiff, putative opt-in plaintiffs, and members of the Settlement Class, and reviewing their time and pay

records to evaluate their claims. *Osman Declaration*, ¶¶ 19. 22 (Ex. B). Class Counsel and staff have spoken to numerous class members and FLSA opt-in plaintiffs, who have called regularly with questions about the case, their legal rights, and the likelihood of receiving compensation from this long-awaited settlement. **Id**. This weighs in favor of Plaintiffs' fee request.

### xii.     Awards in Similar Cases.

Courts also look to fee awards in analogous cases to determine the reasonableness of the percentage requested. As discussed above, the requested hourly rate of $200.00 per hour is towards to the bottom of the range of what is typically charged as a contingency fee by plaintiffs' lawyers in hybrid Rule 23 / FLSA actions such as this. As discussed above, Plaintiffs' Counsel was awarded rates far surpassing $200 per hour in two confidential settlements approved this year in the Western District of Missouri.[3] This factor, along with all the others, supports Plaintiffs' request.

Pursuant to the Fair Labor Standards Act, a prevailing party in such an action is entitled to recover all reasonably incurred attorneys' fees and costs. As the articulated criteria, the *Johnson* factors, weigh heavily for approval of the fee requested, it is therefore is abundantly reasonable and should be approved. Furthermore, the degree of success should be taken into consideration and given that the class members are receiving approximately 783.5% of their best day damages, Plaintiff's Counsel has achieved an extremely favorable result and should be rewarded accordingly. Plaintiff, therefore, requests final approval of an attorneys' fees and costs award of $21,400.

## V.     CONCLUSION

For the reasons set forth above and in the supporting declarations and exhibits, the settlement presented is an immediate, real, substantial, and fair settlement, and Plaintiffs ask this Court to grant final approval of the Parties' Agreement (Doc. 14-1) and its attachments, and for such other relief as

---

[3] Supra at p. 17.

the Court deems just and proper.

Dated:  July 15, 2019

Respectfully submitted,
OSMAN & SMAY LLP

/s/ Matthew E. Osman
Matthew E. Osman, KS Bar #60137
Kathryn S. Rickley, MO Bar #59435
8500 W. 110th Street, Suite 330
Overland Park, Kansas 66210
Telephone:    (913) 667-9243
Facsimile:    (866) 470-9243
mosman@workerwagerights.com
krickley@workerwagerights.com

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that on July 15, 2019, a true and correct copy of the foregoing document was filed electronically through the Court's CM/ECF system, and therefore, will be transmitted to all counsel of record by operation of the Court's CM/ECF system.

By:   /s/ Matthew E. Osman
      ATTORNEY FOR PLAINTIFFS